UNION PACIFIC RAILROAD COMPANY, APPELLANT, v. COUNTY
OF CHEYENNE ET AL., APPELLEES.

FILED MAY 21, 1902.   No. 10,738.

Commissioner's opinion, Department No. 1.

1. **Injunction:** ILLEGAL TAXES.   Injunction will not lie to restrain
the collection of taxes, unless such taxes are levied for an un-
authorized or illegal purpose.

2. **Facts.**   Under the facts in this case, *held*, that the taxes, the col-
lection of which is sought to be restrained by injunction, are
not illegal or unauthorized.

APPEAL from the district court for Cheyenne county.
Heard below before GRIMES, J. *Affirmed.*

*E. P. Smith* (*W. R. Kelly,* of counsel), for appellant.

*H. E. Gapen, contra.*

KIRKPATRICK, C.

This is a suit brought by the Union Pacific Railroad
Company against Cheyenne county, the county commis-
sioners, the county treasurer and the county clerk, for the
purpose of enjoining the collection of a certain portion of
the levy for bridge fund made by such county in the year
1898.   A petition was filed which, among other things,
pleaded that the board of county commissioners, on the
14th day of January, 1898, duly made an estimate of the
necessary running expenses of Cheyenne county for the
year 1898, one item of which estimate was the sum of
$6,000 for repairs and building of bridges; that the county
commissioners, on the 15th day of February, 1898, made
an order to the county treasurer, which was duly entered
upon the records of the county board, and acted upon by
the treasurer, transferring the sum of $1,200, then in the
county bridge fund, to the county general fund; that on
the 23d day of June, 1898, the county board made another
order directing the county treasurer to transfer an

additional sum of $800, then in the bridge fund, to the general fund of the county, which order was also acted upon by the treasurer. These two items, aggregating $2,000, were an unexpended balance in the bridge fund remaining of the levy for the year 1897. It also appears that the levy for the general fund for the year 1897 had been exhausted. The county board, on June 22d, 1898,—the last day of its session as a board of equalization,—made the levy of county taxes for that year, and among the items so levied was a levy of four mills for bridge fund. The entire levy of the county for that year was within the fifteen-mill limit provided by the constitution and laws of the state. It is further alleged that the total valuation of the taxable property in the county for the year 1898 was the sum of $1,158,840, and that there would be realized from the levy of four mills thereon the sum of $4,635.36; that the assessed valuation of the property of the railroad company in the county was the sum of $404,348, and that the bridge fund levy of four mills thereon would produce the sum of $1,617.39. It is alleged that the $2,000 hereinbefore mentioned was illegally and improperly transferred from the bridge fund to the general fund, and that, if said sum had remained in the bridge fund, it would only have been necessary to levy a bridge fund of 2.3 mills on the dollar, and that in making a levy of four mills the county board made an illegal and excessive levy of 1.7 mills, which, upon the valuation of the property of the railroad company, would produce the sum of $687.39, and that the taxes assessed against the railroad company were to that extent illegal and unauthorized. There was a prayer for an injunction, restraining the collection of that portion of the levy claimed to be excessive, and for a decree of the district court, canceling and setting aside and holding for naught the excessive portion of the levy. It was alleged that the railroad company was ready and willing to pay 2.3 mills bridge fund, amounting to the sum of $973.50, which it admitted was a valid levy, and asked the court to ascertain the amount

which it was justly required to pay. To this petition an answer was filed by appellees, admitting practically all of the allegations of the petition, except such portions as alleged that the transfer of the funds mentioned and in the manner stated, was unlawfully and illegally made, and alleging that the county commissioners had a right to make such transfer of the funds, and that it was made in good faith. The cause was submitted to the court upon the pleadings, no testimony being offered by either party. Upon the filing of the petition a temporary injunction was granted, which, upon the trial of the cause in the district court, was dissolved, and the suit of the railroad company dismissed for want of equity. The cause is brought to this court upon appeal.

The single question requiring determination is whether or not the railroad company can enjoin the collection of a portion of the four-mill bridge fund levied for the year 1898 because of the action of the county board in transferring $2,000 of an unexpended balance in the bridge fund, derived from the levy of 1897, to the county general fund. From a careful examination of the statute we are constrained to say that the action of the board of county commissioners in transferring the unexpended balance remaining in the bridge fund to the general fund was unauthorized and illegal. *Union P. R. Co. v. Dawson County*, 12 Nebr., 254; *State v. Lincoln County*, 18 Nebr., 283. The statute providing for the transfer of an unexpended balance remaining in a fund to the county general fund probably has no application to balances remaining in funds for which, under the statute, a levy is required each year. There is no county in the state which is not required to make expenditures for the erection and repair of bridges each year, and under the statute a levy is required to be made for such purpose within the limit of four mills for whatever amount is necessary to meet the expenditures for such year. To permit the county to make a levy for the bridge fund in excess of the amount required for the year in which the levy is made with the purpose in view

of transferring the balance to the general fund would be to permit it, by indirection, to accomplish what, by statute, it is prohibited from doing directly. What the remedy of the railroad company in the matter of the transfer of these funds was,—whether it should, by proper proceedings, have required the county treasurer to replace in the bridge fund the moneys transferred therefrom into the general fund, or whether the treasurer should have been required to disregard the order of the board upon the ground that it was void,—can not be determined in this case. The rule in this state is well settled that injunction will lie to restrain the collection of a tax levied or assessed for an unauthorized or illegal purpose. *Chicago, B. & Q. R. Co. v. Nemaha County*, 50 Nebr., 393; *Chicago, B. & Q. R. Co. v. Cass County*, 51 Nebr., 369, 370; *Burlington & M. R. R. Co. v. York County*, 7 Nebr., 487. The rule is also equally well settled that under the provisions of section 144 of chapter 77, article 1, Compiled Statutes, 1899, the courts will not interfere by injunction to prevent the collection of taxes unless such taxes are illegal, or have been levied for an unauthorized purpose. *Hallenbeck v. Hahn*, 2 Nebr., 377; *South Platte Land Co. v. City of Crete*, 11 Nebr., 344; *Chicago, B. & Q. R. Co. v. Klein*, 52 Nebr., 258. In the case at bar, the railroad company has wholly failed to point out anything illegal or unauthorized in the four-mill levy for bridge fund, the collection of which it seeks to enjoin. The county board made an estimate of the amount required for repair and construction of bridges for 1898 in the sum of $6,000. The amount which would be realized by the four-mill levy, providing all the taxes were paid, would be the sum of $4,635.36. If we consider the $2,000 wrongfully transferred from the bridge fund as still remaining in that fund, the total amount in the fund for disposition by the county would be the sum of $6,635.36. But experience has demonstrated that not all of the taxes levied are paid. This fact was in contemplation by the legislature when it by law provided that but 85 per cent. of the levy could

be drawn upon by the issuance of warrants until such time as there was money in the treasury upon which they might be drawn.  If we estimate that 85 per cent. of the $4,635.36 levied would be collected it would produce $3,940.05, and to this should be added the $2,000 wrongfully transferred from the bridge fund, and then the county would have $5,940.05 for use in the repair and construction of bridges for the year 1898.  This would be $59.95 less than the county board at its January meeting estimated would be necessary for the use of the county during the year.  It was, no doubt, the purpose of the legislature, in requiring the county board to make, enter upon the county records and publish an estimate of the necessary expenses of the county during the ensuing year, to give notice to the taxpayers and other persons interested of the amount of taxes to be levied, and if any taxpayer or other person had ground for complaint regarding the levy proposed to be made, either because it was too large, or because it did not provide for payment of obligations which it was the duty of the county to pay, his remedy, whatever its nature, must be invoked before the levy for taxes had been made.  It is very clear that a party claiming to be injured could not stand idly by until after the levy for taxes had been made by the county board, and then by injunction seek to prevent the collection of the tax upon other ground than expressly authorized by statute.

It appearing clearly that no valid objection is urged against any portion of the four-mill levy for bridge fund, the trial court was right in dismissing the petition of the railroad company.  It is therefore recommended that the judgment of the district court be affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.